```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

JOE HAND PROMOTIONS, INC.,
as Broadcast Licensee of the November 11,
2000, Lewis/Tua Program,                      CV-03-0115 (CPS)

                      Plaintiff,
                                              MEMORANDUM OPINION
     - against -                              AND ORDER

ALEX CONTRERAS, Individually
and as an officer, director, shareholder,
and/or principal of MOMENTS TAVERNA, INC.
d/b/a MOMENTS TAVERNA a/k/a MOMENTS LAVERNA,
and MOMENTS TAVERNA, INC. d/b/a MOMENTS
TAVERNA a/k/a MOMENTS LAVERNA;

                      Defendants.

----------------------------------------X
```

SIFTON, Senior Judge.

By Order dated July 20, 2005, this Court entered default judgment against Defendants Alex Contreras, individually and as an officer, director, shareholder, and/or principal of Moments Taverna, Inc. d/b/a Moments Taverna a/k/a Moments Laverna, and Moments Taverna, Inc. d/b/a Moments Taverna a/k/a Moments Laverna (hereinafter "Moments Taverna") (collectively "Defendants"). Defendant Contreras, acting *pro se*, subsequently submitted a letter stating that he had not received notice of the action, and that the plaintiff had fabricated the events on which the complaint is based. This Court issued an order to show cause why the default judgment should not be vacated. Plaintiff Joe Hand Promotions has filed a response in opposition. For the following

reasons, the default judgment is vacated.

## BACKGROUND

Plaintiff Joe Hand Promotions commenced this action against the Defendants on January 9, 2003.[1] In the complaint, plaintiff alleged that it was granted the right, by contract, to distribute the November 11, 2000 Lewis/Tua boxing match via closed circuit television and encrypted satellite signal. Plaintiff subsequently entered into agreements with various establishments in New York state, allowing them to exhibit the program to their patrons. Plaintiff alleges that the Defendants and/or their agents intercepted the satellite signal and unlawfully exhibited the closed circuit program at Moments Taverna for the purposes of commercial gain, in violation of 47 U.S.C. § 605(a) and 47 U.S.C. § 553.[2] Plaintiff also alleges

---

[1] Plaintiff originally brought this action on May 29, 2001 against five groups of defendants, including Moments Taverna, under the case number CV 01-3418. By Order dated January 2, 2003, Magistrate Roanne Mann directed that the groups of defendants be severed and a new complaint be filed against each separate group of defendants.

[2] Section 605(a) provides in pertinent part that:
No person not being authorized by the sender shall intercept any radio communication and divulge or publish the...contents...to any person....or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled hereto.

Section 605(e)(3) also allows for an enhancement of damages "by not more than $100,000 for each violation of subsection (a)" if a defendant's violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain..."

Section 553(a) provides, in pertinent part that:
No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise

that the Defendants or their agents modified a device or utilized equipment unlawfully knowing or having reason to know that the device was primarily of assistance in the unauthorized decryption of satellite cable programming, in violation of 47 U.S.C. § 605(e)(4).[3]

Plaintiff initially filed its complaint against Maria Fernanda Mendez and Moments Taverna. Service was made on the corporate defendant Moments Taverna on January 24, 2003, by service upon the Secretary of State of New York authorized to accept service on its behalf. Personal service was made upon Defendant Maria Mendez on March 24, 2003. No answer or appearance was made by the defendants, and on August 12, 2004, Plaintiff moved for default judgment. By Order dated September 3, 2004, I entered judgment, by reason of default, against defendants Maria Mendez, individually and as an officer, director, shareholder and principal of Moments Taverna, and against Moments Taverna. Subsequently, Maria Mendez moved to vacate the default judgment, and, by order dated March 23, 2005, I granted her motion.

On May 12, 2005, Plaintiff moved for an order dismissing

---

be specifically authorized by law.

[3] Plaintiff apparently contracts with investigative agencies, which send out auditors to various commercial establishments suspected of unlawfully exhibiting a program on nights when such encrypted programs are broadcast. In support of its Motion for Default Judgment, Plaintiff provided an affidavit from the auditor who was at Moments Taverna on November 11, 2000.

Maria Mendez from the case, a motion which I granted on May 23, 2005.  Also on May 12, 2005, Plaintiff filed an Amended Complaint naming Alex Contreras, individually and as an officer, director, shareholder, and/or principal of Moments Taverna, Inc. d/b/a Moments Taverna a/k/a Moments Laverna, and Moments Taverna, Inc. d/b/a Moments Taverna a/k/a Moments Laverna as Defendants. The Clerk's notation of default indicates that Defendant Contreras "was served with a copy of the Amended Summons and First Amended Complaint on June 2, 2005, by affixing a copy of the Amended Summons and First Amended Complaint to the door of the defendant's residence..., that the Process Server attempted to serve the defendant on May 26, 2005 at 8:16p.m., May 28, 2005 at 7:10a.m., May 31, 2005 at 4:42p.m., June 2, 2005 at 3:52p.m., and that on June 3, 2005, the Process Server mailed a copy of the summons and complaint to the defendant...."  No answer or appearance was made by Contreras or Moments Taverna, and on July 12, 2005, Plaintiff again moved for default judgment.  By Order dated July 20, 2005, I again entered a default judgment against Defendants Alex Contreras, individually and as an officer, director, shareholder, and principal of Moments Taverna, Inc. d/b/a Moments Taverna a/k/a Moments Laverna, and against Moments Taverna, Inc. d/b/a Moments Taverna a/k/a Moments Laverna (the "Default Judgment").

On August 1, 2005, Defendant Contreras, acting *pro se*, sent the undersigned a letter stating that he had not received notice of Plaintiff's action, and that Plaintiff had fabricated the events set forth in the complaint.

**DISCUSSION**

Rule 55(c) of the Federal Rules of Civil Procedure provides that "[f]or good cause shown the court may set aside an entry of default judgment, and if judgment by default has been entered, may likewise set it aside in accordance with 60(b)." Fed.R.Civ.P. 55(c). Rule 60(b) authorizes the court to relieve a party from final judgment based on grounds including "mistake, inadvertence, surprise, or excusable neglect" or for "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b).

The Second Circuit has set forth three criteria in determining whether to vacate a default judgment: "(1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the nondefaulting party if relief is granted." *American Alliance Ins. Co., Ltd. V. Eagle Ins. Co.,* 92 F.3d 57, 59 (2d Cir. 1996)(quoting *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir.1982). Given this Circuit's strong preference "for resolving disputes on the merits," *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir.1993), all doubts must be resolved in the defendant's favor.

*See David v. Musler,* 713 F.2d 907, 915 (2d Cir.1983)(stating that all doubts should be resolved in favor of those seeking relief from default). Moreover, "concerns regarding the protection of a litigant's rights are heightened when the party held in default appears *pro se*," as Defendant appears here. *Enron Oil Corp.,* 10 F.3d at 96. The Second Circuit has held that "as a general rule, a district court should grant a default judgment sparingly and grant leave to set aside a default judgment freely when the defaulting party is appearing *pro se*." *Id.* After weighing the three factors with respect to this action, I conclude that the default judgment should be vacated.

### Willfulness

The Second Circuit has interpreted willfulness in the default judgment context "to refer to conduct that is more than merely negligent or careless." *SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998). A default may also be found willful where the conduct of the litigant or counsel "was egregious and was not satisfactorily explained." *Id.* at 739-39; *Gonzalez v. City of New York,* 104 F.Supp.2d 193, 196 (S.D.N.Y. 2000).

Defendant Contreras has never appeared before the Court on this matter. The first submission received from Defendant Contreras is his letter to the Court after default judgment had been granted. In this letter, Defendant Contreras contends that his inaction was due to the fact that he never received notice of

the action. The Defendant also claims that his brother told him that Joe Hand employees have been causing a nuisance outside his residence where he is "usually never at."

While I find Defendant's conduct in not following up on his brother's remarks to be negligent, I am not convinced that it was willful or deliberate. More likely, it was "attributable to his lack of knowledge and familiarity with the legal process." *Time Warner Cable v. Cabada,* 1997 WL 797533, at *2 (E.D.N.Y. 1997)(finding defendant's failure to timely respond to the Complaint not to be willful). However, even "gross negligence can weigh against the party seeking relief from a default judgment, though it does not necessarily preclude relief." *American Alliance Insurance Co.,* 92 F.3d at 61 (finding defendant's gross negligence to weigh "somewhat against granting relief."). Thus, while Defendant's negligence weighs "somewhat against granting relief," I find that on balance, the remaining factors and the Defendant's *pro se* status weigh in favor of a determination that the default judgment should be vacated.

### Meritorious Defense

To establish the existence of a meritorious defense, a party seeking relief from default judgment must state a defense which, "if proven at trial would constitute a complete defense." *Enron Oil Corp.,* 10 F.3d at 98; *see also, American Alliance Insurance Co.,* 92 F.3d at 61. A defendant need not prove the

defense conclusively, *McNulty,* 137 F.3d at 740; however, a defendant "must do more than make conclusory denials." *Enron Oil Corp.,* 10 F.3d at 98.

Here, Defendant Contreras does little more than make conclusory denials, but the little more that he does state, if proven at trial, would constitute a complete defense. Defendant Contreras claims that while he was an officer of the Moments Tavern at the time of the incident, the business was being handled by an administrator, because Contreras did not have time to spend at the establishment. He claims that he specifically asked the administrator if the fight in question was shown that night, and the administrator specifically informed him that it was not. He further contends that whenever events were shown on the television screen at Moments Tavern, they were soccer events, and not boxing matches. Lastly, he claims that on Saturday nights (the alleged incident took place on a Saturday), Moments Tavern served as a nightclub, therefore, no special events were needed.

Construing Defendant's arguments liberally, I find that sufficiently meritorious defenses have been raised.

### Prejudice

Finally, Plaintiff argues that it will be prejudiced if the default judgment is vacated. Although Plaintiff has suffered a delay in this action, delay alone is insufficient to establish

prejudice. *See Davis v. Musler,* 713 F.2d 907, 916 (2d Cir.1983). A plaintiff must establish that "its case has suffered from the loss of evidence, increased difficulties of discovery, or greater opportunity for fraud and collusion." *Time Warner,* 1997 WL 797533, at *2. Plaintiff argues only that "[t]his case involves events that transpired on November 11, 2000 in a Defendant establishment that has gone out of business so the prejudice that would result from delay in terms of loss of evidence and increased difficulties of discovery is substantial." However, it is not necessarily the case that evidence has been lost or that Plaintiff will have increased difficulties with discovery as a result, and, as stated above, all such doubts must be resolved in the defendant's favor. Thus, this factor does not weigh against vacating the default judgment.

Accordingly, weighing all three factors, I conclude that the Default Judgment should be vacated.

## CONCLUSION

For the foregoing reasons, the Default Judgment is hereby vacated. The Defendants are ordered to move, answer or otherwise respond to the Complaint within thirty (30) days of the date of this order. If Defendants fail to respond to the Complaint within the time provided in this order, the Plaintiff may apply again for a default judgment.

The Clerk is directed to furnish a filed copy of the within to all parties.

    SO ORDERED.

Dated: Brooklyn, New York

    February 13, 2006

    By: <u>/s/ Charles P. Sifton (electronically signed)</u>
      United States District Judge